IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Amanda Mae Crawford, | ) | |
| | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY** |
| Plaintiff, | ) | **JUDGMENT, GRANTING** |
| | ) | **COMMISSIONER'S MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT, AND** |
| | ) | **AFFIRMING COMMISSIONER'S** |
| Commissioner of Social Security, | ) | **DECISION** |
| | ) | |
| | ) | Case No.: 1:20-cv-00170 |
| Defendant. | ) | |

The plaintiff, Amanda Mae Crawford ("Crawford" or "claimant"), seeks judicial review of the Social Security Commissioner's denial of her application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). This court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Before the court are competing motions for summary judgment filed by Crawford and the Commissioner of Social Security ("Commissioner"). (Doc. Nos. 23, 26).

I.   **BACKGROUND**

Crawford filed an application for disability benefits and supplemental security income on December 14, 2017, alleging disability relating to spinal stenosis, ankylosing spondylitis, sciatica, herniated disk, a knee problem, irritable bowel syndrome/stomach problem, depression, attention deficit hyperactivity disorder ("ADHD"), and a neck problem. (Doc. No. 23-1 at 1). The alleged onset disability date was November 15, 2015. (*Id.*). Crawford amended the alleged onset date to March 13, 2017, after a snow blowing incident. (*Id.*). Crawford's application was denied upon its initial review and again upon reconsideration. (*Id.*). A hearing was held on September 9, 2019, before Administrative Law Judge ("ALJ") Chris Stuber. (*Id.* at 1-2). Crawford was represented at

the hearing by attorney Hannah Yancy Pierce. (Doc. No. 19-2 at 42). Vocational expert Stuart

Gilkison appeared telephonically. (*Id.*). On October 2, 2019, ALJ Stuber issued a decision finding

Crawford was not disabled. (Doc. No. 23-1 at 2).

The Appeals Council denied a request for review on July 14, 2020, rendering the ALJ's

decision the final decision of the Commissioner. (*Id.*). On September 21, 2020, Crawford filed a

Complaint in this court seeking review of the Commissioner's decision. (Doc. No. 6).

At the time of the amended alleged onset disability date, Crawford was forty-two years of

age. (Doc. No. 25 at 3). At the time of the ALJ's decision, Crawford was forty-four. (Doc. No. 23-

1 at 3). She has a high school education and has worked in various capacities, including as a

technician, cashier, hand packager, and general clerk. (Doc. No 19-2 at 45-46, 60; Doc. No. 23-1

at 3).

## II.   LEGAL STANDARD

Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months…." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he
> would be hired if he applied for work. For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the national economy" means
> work which exists in significant numbers either in the region where such individual
> lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

In determining whether an individual has a disability under the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Under the first step, the Commissioner must consider a claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An individual is not disabled if they have engaged in substantial gainful activity. *Id.*

Second, the Commissioner "determines whether the claimant has a severe impairment that significantly limits [the claimant's] physical or mental ability to do basic work activities." *Igo v. Colvin*, 839 F.3d 724, 727-78 (8th Cir. 2016) (quoting 20 C.F.R. § 404.1520(c)) (internal quotations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), (c). Basic work activities mean "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 416.922(b), 404.1522(b). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 416.922(b), 404.1522(b).

Third, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has an impairment or combination of impairments which meet or are equal to the criteria of the listed impairments [in 20 C.F.R. pt. 404, Subpt. P, App. 1], the claimant will be presumed disabled. *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment." *Dols*, 931 F.3d at 744 (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

Fourth, the Commissioner considers residual functional capacity and past relevant work of the claimant. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Residual functional capacity is defined as "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant is not disabled if they have residual functional capacity to perform past relevant work. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Lastly, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant may make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant may do other work, they are not disabled. *Id.* To support a finding that the claimant is not disabled, there must be a demonstration of work that the claimant may do which exists in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Upon reviewing the record, the court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kiljakazi*, No. 1:18-CR-146, 2022 WL 17403569, at *6 (D.N.D. Dec. 2, 2022).

"Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (internal quotations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

The court need consider evidence which supports the Commissioner's decision, as well as that which detracts from it. *Charette v. Saul*, No. 3:18-CV-254, 2019 WL 7605835, at *2 (D.N.D. Nov. 22, 2019); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019). The court will not disturb the ALJ's decision unless it lies outside the available "zone of choice." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the "zone of choice" simply because the court may have reached a different conclusion if it were the initial fact finder. *Id.*

## III.   DISCUSSION

The ALJ applied the five-step test to determine whether Crawford was disabled. First, the ALJ found that Crawford was not engaged in substantial gainful activity since March 13, 2017, the amended alleged onset disability date. (Doc. No. 19-2 at 14). Second, the ALJ concluded Crawford had the following severe impairments: obesity; degenerative disc disease; cervical and lumbar spine; degenerative joint disease; bilateral knees; and cubital tunnel syndrome, status post release. (*Id.*). Third, the ALJ found Crawford did not have an impairment or combination of impairments meeting or medically equal to the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 17). Fourth, the ALJ determined that Crawford has the residual functional capacity to perform sedentary work as is defined under 20 C.F.R. §§ 404.1567(a) and 416.967(a). (*Id.* at 18). Specifically, the ALJ determined:

> [t]he claimant is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand and/or walk about 2 hours in an 8-hour workday and can sit about 6 hours. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to hazardous machinery and unprotected heights.

(*Id.*). The ALJ also found that Crawford was unable to perform past relevant work. (*Id.* at 23). Fifth, the ALJ considered Crawford's age, education, work experience, and residual functional

capacity ("RFC"), and determined there were a significant number of jobs Crawford could perform within the national economy. (*Id.*).

Crawford alleges that (1) "[t]he ALJ's RFC determination is not supported by substantial evidence because he failed to explain a notable deviation from otherwise favorably-viewed State Agency opinions and the likely worsening of issues with maintaining position relevant to that deviation;" (2) "[t]he ALJ failed to adequately consider Plaintiff's upper extremity limitations, leaving the decision to omit upper extremity limitations unsupported by substantial evidence;" and (3) "[t]he ALJ's analysis of Plaintiff's subjective report of symptoms is unsupported by substantial evidence." (Doc. No. 23-1 at 1).

### A.  Residual Functional Capacity Determination

The court first considers Crawford's claim that "[t]he ALJ's determination is not supported by substantial evidence because he failed to explain a notable deviation from otherwise favorably-viewed State Agency opinions and the likely worsening of issues with maintaining position relevant to that deviation." (Doc. No. 23-1 at 1). Crawford argues that while the ALJ found the State Agency opinions persuasive, he needed to address the opinions referencing Crawford's "need to alternate sitting and standing more than what she would have with normal breaks as her knees get sore and achy." (*Id.* at 16).

The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [their] limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). There is not a requirement that the ALJ's RFC finding be supported by a specific medical opinion, nor is the ALJ limited to only considering medical evidence. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022).

When making the RFC determination, the ALJ determined that Crawford is able to lift/carry 10 pounds occasionally and less than 10 pounds frequently, can stand and/or walk about 2 hours in an 8-hour workday and can sit for 6 hours, can on occasion climb ramps and stairs but never ladders, ropes, or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl, and should avoid exposure to hazardous machinery and unprotected heights. (Doc. No. 19-2 at 18).

In addressing the State agency opinions, the ALJ concluded:

> The undersigned has considered the State agency medical consultants assessments, including the finding on initial determination of ability to lift and carry at the sedentary level, but with ability to stand/walk about six hours in an eight-hour workday, and the finding on reconsideration of similar capacity for sedentary level lift and carry but with stand/walk for up to four hours in an eight-hour workday (Exs. 2A; 4A; 6A; 8A). The undersigned finds persuasive the limitation to sedentary level lift and carry, but is also satisfied that the evidence, including more recent medical records, supports, for example, a limitation to standing and walking for about two hours in an eight-hour workday. The undersigned also accepts that the claimant is otherwise somewhat more limited than indicated by the State agency consultants including, for example, from a postural standpoint and in terms of exposure to hazards from an environmental standpoint. Still, the undersigned remains satisfied that the claimant has neither been nor has become more limited than set forth in the above-established residual functional capacity.

(Doc. No. 19-2 at 22) (error in original).

The ALJ's decision is properly supported by substantial evidence.  The ALJ provided he "will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from [claimant's] medical sources. [He] fully considered the medical opinions and prior administrative medical findings in [claimant's] case." (Doc. No. 19-2 at 22). Further, the ALJ is not required to accept or reject an entire medical opinion as a whole. *Olson v. Colvin*, No. C14-4086-LTS, 2016 WL 3747878, at *10 (N.D. Iowa July 8, 2016); *see, e.g., Tuley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991). Rather, the ALJ is entitled to conclude that some portions of an opinion hold more weight than others. *Olson*, 2016 WL 3747878, at *10. The ALJ considered the State agency consultant assessments

and did not accept or reject them as a whole, rather, he found the opinions *persuasive*, while acknowledging Crawford required more limitation in some areas.

While the ALJ did not specifically mention the State agency opinions that "[Crawford] will need to alternate sitting and standing more than what she would have with normal breaks as her knees get sore and achy" (Doc. No. 19-3 at 14, 30, 45, 61), the ALJ addressed Crawford's sitting requirements throughout his findings. The ALJ noted both Crawford's testimony that she can only stand for 15 minutes before needing to sit, her ability to walk for only 15 minutes with a walker, and her ability to sit for only 15 minutes before needing to get up and move around. (Doc. No. 19-2 at 18-19). The ALJ also identified that Crawford's mother did not mention problems with Crawford's ability to sit but did mention issues with standing and walking. (*Id.* at 22). The ALJ similarly considered Crawford's weight pursuant to SSR 19-2p and how it limits her ability regarding standing/walking. (*Id.* at 19). His findings also include medical records providing that Crawford was "observed as ambulating normally, including normal gait and station (Ex. 7F, pgs. 14-15)." (*Id.*).

The ALJ also addressed Crawford's knees. The ALJ found that Crawford's musculoskeletal impairments, including those of the back and legs would limit her to a degree. (Doc. No. 19-2 at 19). The evidence shows degenerative changes to the cervical spine and increase in degenerative disc disease to the lumbar spine. (Doc. No. 19-9 at 166-67.) The ALJ also considered that Crawford exhibited restricted lumbar flexion and intermittent indication of bilateral paraspinal spasm and noted that she appeared to be in a degree of pain-related distress. (Doc. No. 19-2 at 20). The medical records likewise provide that Crawford had mild to moderate degenerative changes to her left knee. (Doc. No. 19-9 at 98). However, the records also reflect that Crawford was able to "sit up and actually touch her feet without difficulty," as well as ambulate

without difficulty. *Id.* at 151. During a 2019 assessment of Crawford's knees at the Bone & Joint Center, objective findings upon examination noted generally benign findings. (*Id.* at 21; Doc. No. 19-12 at 168).

"Reversal is not warranted… 'merely because substantial evidence would have supported an opposite decision.'" *Tiley v. Astrue,* 580 F.3d 675, 679 (8th Cir. 2009) (quoting *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  The court cannot conclude that the ALJ's RFC determination was outside the zone of available choice.

## B.  Upper Extremity Limitations

The court next considers Crawford's claim that the "ALJ failed to adequately consider Plaintiff's upper extremity limitations, leaving the decision to omit upper extremity limitations unsupported by substantial evidence." (Doc. No. 23-1 at 1). Crawford argues that the ALJ barely addressed her upper extremity complaints, or the extent to which the "severe impairment affected the RFC." (Doc. No. 23-1 at 19).

The ALJ adequately considered Crawford's upper extremity limitations. In reference to Crawford's hand limitations, the ALJ noted:

> The claimant testified at the hearing to exceptionally poor ability to lift. She explained that she tries to help carry groceries, but can only carry in one or two bags and then is done and unable to assist further. The claimant additionally to issues with weakness and debilitating feelings of pins and needles down her arms and into her hands and fingers. She noted poor ability to grab and grasp with tendency to drop things, including testifying at times to inability to even hold toilet paper. She further testified to needing her mother to help her dress with her condition.
>
> ***
>
> Interestingly, despite the claimant's allegations of being essentially an invalid, including inability to perform household chores and needing her mother to assist in even dressing herself, the claimant reported during her psychological examination with Dr. Johnson discussed above that since she was not working her mother expected her to do all the household chores (Ex. 14F, pg. 3). In fact, the claimant stated "I'm a maid" in terms of the above, which is not consistent with her alleged

essentially total reliance on her mother in terms of day to day functioning (Ex. 14F, pg. 3).

(Doc. No. 19-2 at 18-20) (error in original). The ALJ also acknowledged that Crawford's mother reported "some days [Crawford's] hands do not work (Ex. 6E)." (*Id.* at 22). However, her mother also acknowledged that the claimant continued to work some. (*Id.*). The medical records further reveal that Crawford's cubital tunnel release provided relief from her symptoms both prior to and after the alleged amended onset date. (*Id.* at 19).

The ALJ also addressed Crawford's cervical and lumbar degrative disc disease, noting it as severe. (Doc. No. 19-2 at 19). While the ALJ does not specifically address the May 2018 cervical spine MRI, the ALJ discussed imaging of Crawford's back. (*Id.*). "The claimant does have several significant musculoskeletal impairments, including about the back and legs, which would certainly limit her to a degree. The above imaging of her back reflecting fairly significant degenerative changes in addition to degenerative joint disease of the bilateral knees." (*Id.*) The ALJ also found that Crawford engaged in ESI treatment which had been effective and provided good relief. (*Id.*). Her treatment records also reflect such a finding, with Crawford reporting the cervical and lumbar ESIs had "amazing results," with a benefit of around three months. (Doc. No. 19-9 at 37). They also note that she continues to benefit from serial cervical and lumbar ESIs. (Doc. No. 19-12 at 112, 120, 130, 178). Crawford also testified at her hearing to the injections in her neck helping for three months, and the lumbar for a month. (Doc. No. 19-2 at 47).

Based on the analysis above, the court finds the ALJ properly evaluated Crawford's upper extremity limitations. The ALJ provided valid reasoning, based on Crawford's testimony and the record as a whole. Therefore, the court will defer to the ALJ's finding as it is supported by substantial evidence.

### C.  ALJ's Analysis of Crawford's Subjective Report of Symptoms

Lastly the court considers whether the "ALJ's analysis of Plaintiff's subjective report of symptoms is unsupported by substantial evidence." (Doc. No. 23-1 at 1). Crawford alleges that the ALJ was required to use a two-step analysis wherein she was required to "i) determine whether there is a medically determinable impairment that could reasonably be expected to produce pain or other symptoms, and ii) evaluate the intensity and persistence of those symptoms." *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); (Doc. No. 23-1 at 21). In response, the Commissioner asserts that the ALJ properly considered the consistency of Crawford's subjective allegations, along with the medical evidence and other records. (Doc. No. 25 at 12).

When evaluating a claimant's subjective complaints, the ALJ is required to assess the claimant's credibility in light of objective medical evidence and evidence relating to "the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not required to address each *Polaski* factor explicitly, rather, the ALJ may consider and acknowledge the factors prior to discounting the claimant's subjective complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *see also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

Here, the record reflects that the ALJ properly considered the *Polaski* factors and articulated the basis for discounting Crawford's subjective report of symptoms. The ALJ stated that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence…." (Doc. No. 19-2 at 18). Moreover, the ALJ properly considered and weighed Crawford's testimony and available medical evidence.

Crawford asserts that the ALJ's analysis is flawed and unsupported by substantial evidence as it pertains to her ability to partake in chores. As referenced above, the ALJ considered Crawford's testimony pertaining to her inability to carry groceries, dress, or utilize the bathroom without assistance. (*Id.* at 18). The ALJ also considered Crawford's testimony that she has difficulty walking, sitting, sleeping at night, assisting with tasks and chores around the home and requires frequent breaks, but has tried to help with cooking. (*Id.* at 19). However, the ALJ also noted Crawford's report to Dr. Johnson that she was expected to do all household chores and referred to herself as a maid. (*Id.* at 19-20).

The ALJ also considered the third-party function report of Crawford's mother. In considering the report, the ALJ provided:

> However, she acknowledged that the claimant had continued to work some (Ex. 6E). Ms. Johnson also noted that the claimant continued to prepare food for herself daily (Ex. 6E). In addition, she noted that the claimant participated in household chores and the like, to including cleaning the kitchen and bathrooms and straightening up the house. (Ex. 6E). She also noted that the claimant would get out to visit her grandmother an her friends, continued to get outside two or three times a day, and had remained pretty calm in terms of her ability to handle stress (ex. 6E).

(Doc. No. 19-2 at 22) (error in original). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Medhaug v. Astrue*, 578 F.3d 805, 817, (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)) (internal quotation marks omitted); *see also Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (concluding that "'daily activities [such] as getting up, eating, reading, cleaning the house, making the bed and doing the dishes with the help of [a spouse], making meals, visiting with friends, and occasionally shopping and running errands' are inconsistent with a claimant's subjective complaints of disabling pain").

Crawford also argues that the ALJ's analysis is unsupported regarding conservative treatment. She argues that the ALJ has not shown that treatment was conservative, while the

Commissioner asserts that the ALJ properly considered Crawford's treatment during the relevant periods as consisting of medications and injections. (Doc. No. 23-1 at 23; Doc. No. 25 at 13-14). The ALJ properly considered the dosage, effectiveness, and side effects of medication and treatment. Crawford testified during the hearing that surgery was "not going to fix [her] problem." (Doc. No. 19-2 at 48). Further, Crawford was provided with prescription pain medications and epidural steroid injections for pain relief. *See Medhaug v. Astrue*, 578 F.3d 805, 816, (8th Cir. 2009); s*ee also Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (concluding that an impairment cannot be considered disabling if it can be controlled through treatment or medication). The ALJ indicated that she had conservative treatment with multiple indications noting that the treatment, such as ESIs, were effective and provided reasonably good relief. (Doc. No. 19-2 at 19). As previously noted, Crawford's medical records provide that the cervical and lumbar injunctions have provided "amazing results," and she continues to benefit from the ESIs. (Doc. No. 19-8 at 67; Doc. No. 19-9 at 58; Doc. No. 19-12 at 112, 120, 130, 178). The medical records also reflect Crawford noting that her pain management program was going well, she was able to work, and she was reasonably comfortable. (Doc. No. 19-9 at 68).

Crawford argues the ALJ's analysis of the encouragement by Dr. Smith to Crawford to exercise is flawed and unsupported by substantial evidence. She argues that there is no indication that Dr. Smith was considering exercises inconsistent with his opinion, and the ALJ's discussion was "insufficiently explained and contrary to fact." (Doc. No. 23-1 at 22; Doc. No. 28 at 2). Crawford's medical notes from Dr. Smith provide for "Weight Assessment and Counseling: Exercise." (Doc. No. 19-12 at 176). The ALJ interpreted this to mean "Dr. Smith encouraged the claimant to exercise, which is indicative of at least a tacit acknowledgement that the claimant has remained more capable over time that she has alleged." (Doc. No. 19-2 at 21). While the treatment

notes do not expressly state that Dr. Smith counseled Crawford to exercise, the notes are clear that exercise was supported by Dr. Smith, as was written under the weight management and counseling section of the medical records. This supports the ALJ's notation of there being "at least a *tacit acknowledgment*" of Crawford being capable of exercise. (*Id.*) (emphasis added); *see also Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) ("A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where…the claimant's treating physicians are recommending increased exercise.").

Pertaining to the clinical notes, Crawford also argues that the ALJ did not consider the fluctuating nature of Crawford's issues. (Doc. No. 23-1 at 23); *see also Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) ("the ALJ improperly accorded great weight to statements in…treatment notes indicting [claimant] demonstrated 'improvement' without acknowledging that [claimant's] symptoms waxed and waned throughout the substantial period of treatment, without acknowledging the unpredictable and sporadic nature of symptoms, and without assessing the effect of [their] structured living environment"). The court is unpersuaded by *Nowling,* as it refers to a claimant's mental impairments. *See Wellman v. Berryhill*, No. 4:16-CV-04159-LLP, 2017 WL 5990116, at *28 (D.S.D. Nov. 9, 2017) ("It is well-established that mental impairments can wax and wane.") (citing *Nowling*, 813 F.3d at 1123; *Dillon v. Colvin*, 210 F.Supp.3d 1198, 1209 (D.S.D. 2016)). The ALJ acknowledged Crawford's mental impairments, however, Crawford fails to address her mental impairments in her motion for summary judgment, so the court will not consider the issue.

As discussed above, the objective evidence is consistent with the ALJ's analysis of Crawford's subjective report of symptoms. This court may not reweigh the evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). The court finds that the ALJ's determination

concerning Crawford's subjective complaints is supported by substantial evidence after considering the record as a whole and affording deference to the ALJ's reasoning.

## IV.   CONCLUSION

For the reasons articulated above, the court is satisfied that substantial evidence in the record as a whole supports the ALJ's findings and the conclusion that Crawford was not disabled from the amended alleged onset date through the date of the ALJ's decision. Accordingly, Crawford's motion for summary judgment (Doc. No. 23) is **DENIED**, the Commissioner's motion for summary judgment (Doc. No. 26) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 1st day of May, 2024.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court